UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**MARK A. MILLER, SAEID JABERIAN, and CHRISTOPHER J. RAJKARAN,**<br><br>　　　　　Defendants. | Case No. 21-CV-01445 (DSD/ECW) |

**DECLARATION OF KATHLEEN SWEENEY IN SUPPORT OF PLAINTIFF'S MOTION FOR REMEDIES AND FINAL JUDGMENT AGAINST <u>DEFENDANT MARK A. MILLER</u>**

I, Kathleen Sweeney, pursuant to 28 U.S.C. § 1746, declare as follows:

　　1.　　I am over 18 years of age, and I am employed as a Staff Accountant in the Chicago Regional Office of the United States Securities and Exchange Commission ("SEC"), located at 175 West Jackson Boulevard, Suite 1450, Chicago, Illinois 60604. My official duties include participating in fact-finding inquiries and investigations to determine whether the federal securities laws have been or are presently being violated, and assisting in the SEC's litigation of enforcement actions.

　　2.　　I received a Bachelor of Science in Accounting & Finance from Georgetown University. I am a licensed Certified Public Accountant.

3. I make this declaration in support of the SEC's Motion for Remedies and Final Judgment against Defendant Mark A. Miller ("Miller") based on my review and analysis of certain trading records, bank records, and related calculations.

4. In January 2020, I was assigned to assist with the SEC's investigation relating to Mark A. Miller and other individuals. Since that time, I have undertaken various work to become familiar with the subject matter of this investigation and litigation, including reviewing documents and other records available in the SEC's investigatory files and through participating in testimony. Among other things, I have reviewed each of the Defendants' bank records, brokerage records, and trading data obtained by the SEC.

5. The SEC's Amended Complaint alleged that Miller traded in the securities of several penny stock companies ("Issuers"). In connection with the SEC's investigation and litigation, I was asked to calculate the net trading profits realized by Miller from the purchase and sale of stock in seven Issuers: (1) Bebida Beverage Company ("BBDA"); (2) Bell Buckle Holdings, Inc. ("BLLB"); (3) Digitiliti, Inc. ("DIGI"); (4) Encompass Holdings, Inc. ("ECMH"); (5) Simulated Environment Concepts Inc. ("SMEV"); (6) Strategic Asset Leasing, Incorporated ("LEAS"); and (7) Utilicraft Aerospace Industries, Inc. ("UITA").

6. Miller maintained securities trading accounts with E*Trade Securities LLC, Scottrade, and TD Ameritrade. According to Miller's brokerage records, he traded in the stock of BBDA, BLLB, DIGI, ECMH, SMEV, LEAS, and UITA. I prepared a detailed schedule reflecting, for each transaction: the security, trade date, settlement date,

transaction type, quantity, price, and net proceeds from the shares bought or sold. I then calculated Miller's trading profits by using a first-in, first-out ("FIFO") methodology. The FIFO method matches the earliest sell against the earliest buy; in other words, it assumes the first shares Miller sold were those he purchased first. According to my calculations, Miller earned $48,007 in net trading profits from his trading in the stock of BBDA, BLLB, DIGI, ECMH, SMEV, LEAS, and UITA. My summary of Miller's trading and the results of my calculations are reflected in Exhibit A.

7.  Next, at the request of the SEC's attorneys working on this matter, I was asked to review an investment partnership agreement dated March 20, 2019 between MJ Builders of MN, LLC, a Minnesota company of which Miller is the CEO, and Pars Investment Inc., a Minnesota company of which Defendant Saeid Jaberian ("Jaberian") is the CEO ("Profit Sharing Agreement"). Paragraph 4 of the Profit Sharing Agreement states that the "purpose of the partnership shall be to invest the assets of the partnership solely in stocks, bonds, and securities for the education and benefit of the partners." Paragraph 10 of the Profit Sharing Agreement states that the partners agreed to split the net profits and losses in a fifty-fifty percent proportion.

8.  In sworn testimony, Jaberian stated that any payments he made to Miller from February 2019 through July 2019 were pursuant to the Profit Sharing Agreement. (Jaberian Sept. 17, 2020 Tr. 73.) Jaberian also said that Miller told him to buy BBDA and LEAS around February 2019 and that "we made money on" these stocks. (*Id*. 72:19-20.) In sworn deposition testimony, Miller confirmed that the Profit Sharing Agreement covered profits from trading in LEAS and BBDA and that he received compensation

3

from Jaberian as a result of the Profit Sharing Agreement. (Miller Sept. 19, 2024 Dep. Tr. 133-134.)

9. After reviewing Miller's and Jaberian's bank records (and those of their respective entities), I prepared a detailed schedule of transactions for accounts controlled by Miller and Jaberian. My schedule reflected the date of the transaction, the payor, the payee, the amount, the check or wire number, and the memo field. I determined that from March 2019 to July 2019 Jaberian and/or Pars Investment Inc. paid MJ Builders a total of $150,039 by check, of which $125,260 referenced "profit sharing" or "stocks" on the checks' memo lines. These checks were deposited into a bank account controlled by Miller. Exhibit B lists out the checks Jaberian paid to Miller between March 2019 and July 2019.

10. Based on my review and analysis of Jaberian's brokerage records, between February and August 2019, Jaberian bought and sold LEAS and BBDA, among other stocks. He made approximately $156,000 in net trading profits from his trading in the stock of LEAS and BBDA during the relevant period. Fifty percent of $156,000 is approximately $78,000, which is less than Jaberian's total payments of $125,260 to Miller referencing "stocks" or "profit sharing." Accordingly, Jaberian made payments of at least $78,000 to Miller pursuant to the Profit Sharing Agreement. My summary of Jaberian's trading in LEAS and BBDA and the results of my calculations are reflected in Exhibit C.

11. At the request of the SEC's attorneys working on this matter, I added $78,000 to Miller's net trading profits of $48,007, which totals $126,007 in net trading profits.

12. Next, at the request of the SEC's attorneys, I calculated prejudgment interest on Miller's $126,007 in net trading profits. I did this by applying the same interest rate, adjusted quarterly, used by the Internal Revenue Service ("IRS") for computation of interest on underpayment of taxes. I compounded interest on a quarterly basis, beginning on the last day Miller received a payment from Jaberian as part of the Profit Sharing Agreement. The last payment he received was on July 30, 2019 for $3,000 (See Exhibit B). Interest started accruing at the beginning of the following month on August 1, 2019. As requested, I ended the prejudgment interest on June 18, 2021, the date on which the SEC filed its initial complaint against Miller. For simplification purposes and to remain conservative, the partial month of June was ignored and interest stopped accruing on May 31, 2021.

13. As of May 31, 2021, prejudgment interest on the total amount of $126,007 was $9,536. A copy of my prejudgment interest calculation is attached as Exhibit D.

14. I understand that Miller was ordered to forfeit $ 38,292 in a parallel criminal action. I was asked by the SEC's attorneys to subtract this amount from the SEC's total disgorgement claim, which includes prejudgment interest. The SEC's total disgorgement claim is $135,543 (total trading profits of $126,007 plus $9,536 in prejudgment interest). Subtracting $38,292, the amount he was ordered to forfeit in a parallel criminal action, from the SEC's total disgorgement claim, the balance is $97,251.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of December, 2024.

_____
Kathleen Sweeney