UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | Court File No. 21-cv-1445 (DSD/ECW) |
| Plaintiff, | |
| v. | **DEFENDANT MILLER'S BRIEF REGARDING REMEDIES** |
| MARK A. MILLER, SAEID JABERIAN, and CHRISTOPHER RAJKARAN, | |
| Defendants. | |

_____

The United States Securities and Exchange Commission (SEC) filed a Complaint in June, 2018 alleging defendant Mark Miller engaged in a "pump and dump" scheme with penny stocks meant to defraud investors. The Complaint was amended in November, 2021 to include defendants Jaberian and Rajkaran. Meanwhile, the United States Attorney's Office in the District of Minnesota opened an investigation into the pump and dump scheme in 2020. In June, 2021 the US Attorney unsealed an Indictment against the defendants herein charging Miller with conspiracy to commit securities fraud.

The Court is already aware of the underlying facts of this case from both the criminal case and the instant civil action. Miller is not challenging two basic premises from the Amended Complaint. He will not argue about factual allegations and he admits, consistent with his plea agreement in the criminal case, that he violated federal securities law. Miller does not wholly agree that the SEC's calculations about the alleged loss in this matter pertaining to his activities are truly accurate. However, in order to resolve this case,

he takes the position that whether the SEC's calculations are accurate or not, the Court should not require disgorgement beyond the $38,292.00 he already paid. That is the basic question before the Court now: whether equitable principles require Miller to pay more under the circumstances. Miller argues his consent to injunctive relief, his payment of $38,292.00 in the criminal matter, and the prison sentence he received in the criminal matter, considered altogether, is sufficient as punishment or in equity.

Miller's case is not one of individual investors losing their life savings to a fraud scheme now looking to the Court to be made whole again. Rather, this is a manipulation of a loosely regulated market that, while still fraudulent, was not intended to directly harm people. Anyone could take advantage of well-timed buy-ins of stock and profit from it. Of course, the entire enterprise was designed to allow Miller to best profit from stock runs. Miller has already paid a steep price for his conduct.

The SEC seeks disgorgement of ill-gotten gains from a person who no longer has the means to pay it. Their argument is simply that Miller should not be unjustly enriched by his criminal activity. Miller claims he is not enriched by his conduct from nearly ten years ago and the overall effects of the cases against him leaves him unable to pay what the SEC seeks. An order for repayment would become punitive and overly burdensome.

Miller argues he paid a substantial amount in restitution as part of his criminal case settlement, and that should be considered the extent of what he should pay. Disgorgement serves to remedy securities law violations by depriving violators of the fruits of their illegal conduct. *SEC v. Contorinis*, 743 F.3d 296, 301 (2nd Cir. 2014). Disgorgement is an equitable remedy, imposed to "force a defendant to give up the

amount by which he was unjustly enriched." *Contorinis*, at 301. By forcing wrongdoers to give back the fruits of their illegal conduct, disgorgement also "has the effect of deterring subsequent fraud." *Id*. But, this remedy has limits. Because disgorgement does not serve a punitive function, the disgorgement amount may not exceed the amount obtained through wrongdoing. *Id*.

Miller argues the deterrence factor was satisfied when he was sentenced to a prison term and through the injunction on his future involvement in markets. Disgorgement no longer serves this purpose in the instant case. Rather, disgorgement is purely punitive at this stage and should not be ordered. Miller does not have a surplus of cash to pay a judgment. In fact, he reports that his family had to resort to state assistance while he was incarcerated. Miller's contracting business ground to a halt while he was in prison and he is working hard to revive it now that he is out.

Miller's ability to make some money in the penny stock market did not lead to a lavish lifestyle. He state that any money he made was used to acquire property for building houses or was mostly reinvested into his businesses. He relies on income from a storage property he obtained years ago for income while he gets his contracting business back on track. Miller should not be forced to liquidate property that was not involved in his penny stock scheme to satisfy a judgment after everything he went through. That would be an unnecessary sanction and burdensome on his wife and children.

Other judges in the District of Minnesota have raised concerns about disgorgement impermissibly crossing over into punitive sanctions. In *WWE, Inc. v. AWA Wrestling Entertainment, Inc.*, 2019 WL2393062, p.3, then Magistrate Judge Menendez

stated: "because of serious questions concerning Mr. Gagner's ability to pay, the Court finds that imposing additional financial sanctions, whether disgorgement of profits or an additional financial penalty to further deter future violations, would cease to serve the coercive purpose of contempt sanction and transform into punitive fines." The same is true in the instant case. The Court should be concerned about Miller's ability to pay and the punitive nature of the SEC's demand.

Miller argues the District Court has the inherent ability to determine what is appropriate. Principles of equity must include what is right for all the parties, not just what the SEC wants. Equity is marked by "a practical flexibility in shaping its remedies." *Brown v. Board of Education*, 349 U.S. 294, 300, 75 S.Ct. 753 (1955). "Once invoked, the scope of a District Court's equitable power is broad, for breadth and flexibility are inherent in equitable remedies." *Brown v. Plata*, 563 U.S. 493, 538, 131 S.Ct. 1910, 1944 (2011). Miller asks the Court to consider this flexibility in shaping remedies and find that the restitution already paid in conjunction with the outcome of his criminal case satisfies the judgment in full.

                                            Law Office of Robert A. Lengeling, PLLC

Date: __January 13, 2025__         By __*s/ Robert A. Lengeling*__
                                            MN ID# 304165
                                            310 Fourth Ave S, Suite 1050
                                            Minneapolis, Minnesota 55415
                                            (612) 963-1555 / (612) 333-8003 fax
                                            robert@lengelinglaw.com
                                            ATTORNEY FOR DEFENDANT